215 P.2d 598

**HISAW et al. v. HENDRIX et al.**

No. 5229.

Supreme Court of New Mexico.

March 2, 1950.

Mechem & Mechem, Las Cruces, for appellants.

Shipley & Shipley, Alamogordo, for appellees.

McGHEE, Justice.

The plaintiffs below (appellees here) were awarded judgment against the defendants (appellants here) on account of personal injuries, medical expenses, loss of time and the destruction of their automobile as the result of a rear end collision in the nighttime when a car occupied by them and being driven by the plaintiff, H. R. Hisaw, ran into the left rear end of a one and one-half ton truck used as a wrecker and owned by the defendants.

The case was tried to the court without a jury, and the following findings of fact and conclusions of law were filed in the case.

"1. That on the 26th day of February, 1948, the Defendants, acting by and through their agent and employee John Beasley, voluntarily parked and left standing, partially on the paved and main-traveled portion of Highway 70 in Otero County, New Mexico, in the night time, a one and one-half ton truck carrying a truck license and used for transportation of property. At the point where said truck was so left standing, there was a safe and practical place to leave or park said motor vehicle off the paved or main-traveled portion of said highway.

"2. That after parking and leaving said truck as aforesaid, the Defendants neglected and failed to put out any warning flares or reflectors as required by law.

"3. A few minutes after the truck was so parked by the Defendants, the Plaintiffs approached the place where said truck was parked in a 1937 Lincoln Zephyr sedan owned by them and driven by the Plaintiff H. R. Hisaw.

"4. As the Plaintiffs approached the truck of the Defendants they were blinded by the glare of headlights of another automobile parked on the opposite side of the highway from the truck of the Defendants and were unable to see the truck of the Defendants in time to avoid crashing into the rear of said truck, and while driving on the main-traveled portion of said highway the car in which the Plaintiffs were driving did crash into the truck of the Defendants.

"5. That at the time of the collision the car of the Plaintiffs was equipped with proper and sufficient headlights which were burning and their car was equipped with proper braking equipment.

"6. At the time of and immediately prior to the collision between the Plaintiffs' car and the Defendants' truck, the Plaintiff H. R. Hisaw was driving the said car in a cautious and prudent manner and maintaining a lookout for other objects on the highway.

"7. That neither of the Plaintiffs was negligent in any manner in the operation of the car in which they were riding at the time of and prior to the collision.

"8. That the Defendants were negligent in parking their said truck on the said highway and also in failing to immediately put out flares or reflectors; and that the said negligence of the Defendants was the proximate cause of the collision between the two motor vehicles.

"9. In and as a result of the collision, the automobile of the Plaintiffs was demolished beyond repair and both Plaintiffs were injured; and said injuries caused pain and suffering and necessitated expenditures for hospital, medical and surgical treatment and supplies in the amount of $846.15; and their automobile was damaged to the amount of $500.00.

"10. That defendants' wrecker vehicle was used solely for the purpose of towing disabled vehicles and servicing other vehicles on the highway.

"11. That defendants' wrecker vehicle had on it when parked at the scene of the collision the following equipment: clearance lights, tail-light and reflector, all of which were faced in the direction of whence plaintiffs' vehicle came, and the clearance lights were illuminated at the time and immediately prior to the collision of plaintiffs' and defendants' vehicle, and that plaintiffs' views of the same were not obstructed.

"12. That the car of State Policeman Bill Speight had on the back thereof a red emergency light, which was faced in the direction from which plaintiffs came, and which was illuminated at the time and immediately prior to the collision of plaintiffs' and defendants' vehicles.

"13. That the lights of the Massengill car were dimmed and it was completely off the highway, on the shoulder of the road, at the time of the approach of plaintiffs' car to the scene of the collision with the vehicle of defendants.

"14. That plaintiffs knew that the wrecker vehicle of defendants and the vehicle of State Police Bill Speight had passed them on the highway and that there was probably a wreck on the highway in the direction in which they were traveling.

"15. That the weather was clear at the time and place of the collision between the vehicles of plaintiffs' and defendants'.

"16. That plaintiffs had a clear and unobstructed view of the area in which defendants' vehicle was stopped, for a distance of from one-quarter to one-half mile.

"17. That plaintiff, Helen Hisaw, and plaintiff, H. R. Hisaw, were husband and wife and proceeding in a common vehicle at the time of the collision between the vehicles of plaintiffs and defendants.

"The Court concludes as a matter of law:

"1. That the Defendants were guilty of negligence and that such negligence was the proximate cause of the collision between the car of the Plaintiffs and the truck of the Defendants and the resulting injuries and damages to the Plaintiffs.

"2. That neither of the Plaintiffs was guilty of contributory negligence.

"3. That the Plaintiffs are entitled to judgment against the Defendants in the amount of $6,596.15 and for their costs."

■■■ The defendants first attack findings Nos. 1, 2, 4, 5, 6, 7 and 8 made by the court as being contrary to the evidence in the case, asserting that they are not sustained by the record. We have carefully examined the record and find that they are sustained by substantial evidence. Under our well-established rule they will, therefore, not be disturbed.

■■■ The defendants also assign error on the refusal of the trial court to adopt certain of their requested findings. An examination of the record convinces us that the trial court did not err in this regard.

They strongly urge that the wrecker tows disabled cars and is, not a truck used for the transportation of passengers or property, and that its driver was, therefore, not required to immediately put out flares when he parked a part of the truck on the paved portion of the highway. They also point out what they claim is an inconsistency in a part of finding No. 1, relating to the use of the wrecker and finding No. 11, saying the latter finding is controlling. Our statute which requires the placing of flares is Sec. 68-728, 1941 Comp., and we quote the part material here.

"68-728. Trucks over one ton—Emergency lighting equipment.—No motor vehicle carrying a truck license and of more than one (1) ton capacity used in the transportation of passengers or property shall be operated over the highways of this state at any time without carrying in an accessible place the following emergency lighting equipment:

"(a) Three (3) oil-burning torches, capable of burning continuously for not less than twelve (12) hours each, under any and all weather conditions to be carried in a heavy steel container so arranged that the oil flares stand in an upright position at all times.

"(b) Three (3) red flags with suitable standards.

"(c) Three (3) red emergency flares, fusee type, capable of burning at least twenty (20) minutes each, approved by the commissioner of revenue of New Mexico

and the insurance underwriters, and manufactured in accordance with the bureau of explosives specifications.

"In any case of a breakdown or stop, other than stops required by law, upon the paved or traveled portion of the highway between sundown and sunrise, the driver shall immediately display a lighted fusee type flare at the side of the vehicle nearest the traffic, and then proceed forthwith to light and place said oil torches as follows: One (1) torch not less than 100 feet directly in the rear of said motor vehicle; one (1) torch not less than 100 feet directly in front of the said motor vehicle; and one (1) at the side of such vehicle nearest traffic. * * . * "

We think that counsel draw too fine a bead on the statute. The same claim was made in the case of Langford v. Rogers, 278 Mich. 310, 270 N.W. 692, where a passenger car was towing a bobsled and a wreck occurred, resulting in the injury of a child riding on the bobsled. 'The plaintiff there contended that as the bobsled was being towed the provisions of the statute providing that a person injured while being transported as a guest by the owner or operator of a motor vehicle should not have a cause of action in the absence of gross negligence or wilful and wanton misconduct of the driver did not apply. The Michigan court after citing many cases held that it was immaterial whether the injured party was being carried in the car or towed in the bobsled. That in either event he was being transported.

We believe the decision and the cases therein cited are sound and that it is immaterial whether the truck was used for towing cars or carrying them on its body, and that in either case it would be transporting property. In addition, one of the defendants testified that when a car could not be towed it was lifted on top of the truck body and hauled in.

It was not definitely established just how long the wrecker had been standing on the highway when the crash occurred. The truck driver testified that he went across the road, inspected the wrecked car he was to pick up, and walked back to the edge of the pavement when the plaintiff's car struck the truck. He thought that this task took him two or three minutes. Another witness testified she and her party came from the west and that the truck was parked when they arrived and that the crash occurred about five minutes thereafter, but regardless of whether she or the truck driver was correct as to the time, the truck driver did not immediately set about placing the flares as required by the statute.

The defendants contend that the statutes, Sec. 68-523, 1941 Comp., prohibiting the parking of a car or truck on the highway when it is safe and practical to pull off, as well as the one requiring flares to be immediately placed, do not apply in

the case of a wrecker actively engaged in rescue operations, and they rely principally on the case of Oklahoma Power and Water Co. v. Howell, Okl., 207 P.2d 937. We have no quarrel with the doctrine of that case but it is inapplicable to the facts here. There the wrecker was actively engaged in the rescue operation and the driver of the truck that collided with the wrecker saw the latter in plenty of time to stop but was unable to do so because of a broken axle on his truck. It was there held that the proximate cause of the collision was the negligence of the plaintiff in operating his truck in such defective condition.

■ We thus find the defendants guilty of negligence, per se, in two particulars: first, leaving their truck on the pavement when there was ample room for safe parking off the pavement, and, second, failing to immediately put out flares to warn oncoming traffic.

We will next consider the claim that the plaintiffs were guilty of contributory negligence so as to bar their right of action.

The car with the glaring headlights which the court found blinded the plaintiffs was referred to in the testimony as the Massengill car. When the driver of this car reached the scene of the collision he drove his car past the state police car, dimmed his lights, got out and went back to the wrecked car to see if he could be of assistance. From the plat introduced in evidence as well as the testimony of the witnesses, his car could well have hidden the lights of the policeman's car from the sight of both plaintiffs. The court refused to find that the tail-light on the wrecker was burning at the time of the crash.

■ The defendants strongly contend that as the plaintiffs saw the wrecker and state police car pass them 25 or 30 miles back up the road, they could well have expected to find the road blocked, and that, in any event, they should have seen the lights of the cars there and have stopped and avoided the accident. When the wrecker and state police car passed them Hisaw did state to his wife that there was probably a wreck somewhere, but it is unlawful to park on the highway when it is safe and practical to drive off of it and we do not think they should be held to anticipate a violation of law, especially with a state policeman present. The plaintiffs testified that the only lights they saw until it was too late to avoid hitting the wrecker were the ones that blinded them, and the findings show that the trial court believed them.

They further urge that when the driver of the approaching car was blinded by the lights of the Massengill car, he was guilty of contributory negligence in failing to immediately stop. We had this question before us in Duncan v. Madrid, 44 N. M. 249, 101 P.2d 382, 385, and there said: "The

defendants' contention is that when the lights of the approaching car shone in Jenperrin's eyes (driver of car) he should have stopped. Reasonable men could very easily differ upon the question. Jenperrin was not bound to anticipate that the defendants would leave their car parked at night on the highway without lights or flares. Although he ought to assume that there would be other traffic on the highway north of Espanola, he also had the right to believe that those using the highway would obey the law and not leave trucks parked at a point where travel is to proceed. Whether under the circumstances he ought or ought not to have stopped his car is a debatable question, and one for the fact-finder to decide."

And so we say here, whether under the circumstances the plaintiff driver should have stopped his car was a question for the fact-finder. All of the testimony on the point, including that of the driver of the defendants' truck, is that the plaintiff driver took his foot off the gas feed and slowed his car, and the fact that he slid his tires approximately four feet just before the impact corroborates the testimony of the plaintiffs that they were blinded by the lights of the Massengill car.

The fact-finder resolved all of the facts on the question of contributory negligence against the defendants, and in view of the record we will not disturb them. Duncan v. Madrid, supra.

We have read all of the authorities cited by the defendants as well as many we found in our research and have considered all questions raised, but we are not persuaded that the trial court committed error.

We are convinced that the case was fairly tried, is free of error and that the damages awarded were reasonable.

The judgment will be affirmed, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER and COMPTON, JJ., concur.