391 P.2d 419

Jack TERREL, Plaintiff-Appellee,

v.

Zimmie H. LOWDERMILK, Defendant-Appellant.

No. 7379.

Supreme Court of New Mexico.

April 13, 1964.

Grantham, Spann & Sanchez, Albuquerque, for appellant.

Arturo G. Ortega, Albuquerque, David E. Douglas, Socorro, for appellee.

CARMODY, Justice.

Appellant, who was the defendant below, seeks to reverse the action of the trial court, sitting without a jury, in granting a judgment in favor of appellee.

For ease in understanding, the parties will be referred to as "appellant" and "appellee," although we do observe that the plaintiff below, Jack Terrel, died shortly after the appeal was taken, and Anna Bell Terrel, as administratrix, was substituted as plaintiff by order of the district court. There has been no suggestion of death or revival of the cause in this court as contemplated by rule 8(6) or (7) (§ 21–2–1(8) (6) or (7), N.M.S.A. 1953). Nevertheless, no issue having been raised with respect to this deficiency, we merely note it without expressing any opinion as to the possible consequences.

This was a rear-end collision, which occurred at night. The owner-operator of the parked vehicle was injured, was awarded substantial damages, and the driver of the colliding car appeals.

From the facts as found by the trial court, it appears that at some time between 7:30 and 8:30 p. m., appellee was proceeding in a westerly direction on U. S. Highway 60, a paved road twenty feet in width, having only a center line to divide the lanes of traffic. Appellee was driving a 1942 Ford truck with a flat-bed semi-trailer rig, carrying a relatively light load of baled hay. As he drove along the highway, the right rear power-driven wheel came off and the truck rolled on its drum for 276 feet before being brought to a complete stop. The truck was disabled in such a manner that it was impossible for appellee to avoid stopping and parking the truck on the right edge of the pavement. As soon as possible, appellee placed a red reflector alongside the truck and also placed a reflector in front of and behind the truck, as required by § 64–20–53, N.M.S.A. 1953. After placing the reflectors, appellee went to the front

of the truck, where he attempted to start the motor by means of a hand crank, because the battery was defective. At this time, appellant was also proceeding in a westerly direction in his automobile at a speed in excess of fifty-five miles per hour, when he suddenly collided with the rear of the truck, due to his failure to keep a proper lookout and for failure to have his vehicle under control. The force of the collision pushed the truck onto appellee and, as a result, caused him severe pain, mental anguish and disability of a permanent nature. The trial court concluded from the above summarized facts that appellant had been negligent and that his negligence was the proximate cause of the collision.

Appellant's first point on appeal is that the court erred in finding that the placing of three red reflectors was compliance with § 64–20–53, N.M.S.A. 1953. Appellant argues that the statute requires the placing of a lighted fusee on the traveled portion of the highway at the traffic side of the truck, and that such placing is in addition to the requirement of placing red reflectors or a lighted red electric lantern at specified distances to the side, to the rear, and in front of the vehicle. The pertinent subsection relied upon by appellant reads as follows:

"(a) The driver of such vehicle shall immediately place on the traveled portion of the highway at the traffic side of the disabled vehicle, a lighted fusee and a lighted red electric lantern, or a red emergency reflector."

If we were to disregard the punctuation of the latter part of this subsection, appellant's contention might be well taken; but, unfortunately for the appellant, we cannot do so. It seems quite plain to us, as it must have been to the trial court, that the statute means exactly what it says, viz., that the placing of a red emergency reflector may be used in place of a lighted fusee and a lighted red electric lantern. We are not at liberty to disregard the plain wording of a statute to arrive at the legislative intention. Appellant's argument in this respect is without merit.

It is next argued that the trial court erred in refusing to conclude that the appellee was contributively negligent because the court found that the truck was parked on the traveled portion of the highway, that the truck rolled 276 feet after the wheel came off before it was brought to a stop, that the truck was equipped with a defective battery, and that appellee was standing on the highway in front of the truck attempting to start the motor. Appellant asserts that under §§ 64–20–1 and 64–20–2, N.M.S.A. 1953, and other related sections of the statute, appellee was negligent per se because he did not have his truck properly lighted as required, that he did not have proper lights for a vehicle parked on

the highway as set out in § 64–20–25, N.M. S.A. 1953, that he did not have a vehicle equipped with the proper safety equipment as required by § 64–20–49, N.M.S.A. 1953, and that he did not follow the requirements of § 64–20–52, N.M.S.A. 1953, providing that a vehicle must be parked off the traveled portion of the highway, or, if that is impracticable, then the driver must make every effort to pull the vehicle to the right as far as possible.

In connection with this point, appellant makes no attack on certain of the trial court's findings, but instead urges that the findings required the court to adopt conclusions favorable to appellant. Having carefully reviewed these findings, we do not agree that they would support the conclusion such as requested by appellant. Although it might be possible to find some connection between the court's finding that the truck had a defective battery and the requested conclusions that appellee was thus negligent per se because of the requirement that he have certain lights burning on the truck, nevertheless the fact that the truck was equipped with a defective battery after the accident does not necessarily mean that the proper lights were not burning on the truck or that the battery was defective prior to the emergency stop. The trial court made no finding whether the lights were burning or not before or at the time of the accident. Thus a conclusion that the truck was improperly light-

ed in violation of the statute would not flow from the findings as made.

The cases relied upon by appellant all contain a finding that there was a violation of the statute and that therefore the conclusion of negligence per se followed. Duncan v. Madrid, 1940, 44 N.M. 249, 101 P.2d 382; Olguin v. Thygesen, 1943, 47 N.M. 377, 143 P.2d 585; Trefzer v. Stiles, 1952, 56 N.M. 296, 243 P.2d 605; Hisaw v. Hendrix, 1950, 54 N.M. 119, 215 P.2d 598, 22 A.L.R.2d 285. The cases are simply not applicable, for the obvious reason that the trial court's findings negative any violation of the statutes.

In connection with the above argument, appellant also claims that the findings required the trial court to conclude that appellee had assumed the risk. There is nothing in the findings to indicate that appellee knew of the defect and appreciated the danger. The trial court, having found that he placed the reflectors to the front, to the rear, and at the side, must have concluded that sufficient warning would be given to approaching vehicles so that they would not run into the truck. Reed v. Styron, 1961, 69 N.M. 262, 365 P.2d 912, is not authority under the circumstances here present.

■ Even if we were to assume that appellee violated one or more of the statutes (which the trial court did not find), still it is implicit from the findings, conclusions

and judgment of the trial court that any action or lack of action in this respect was not the proximate cause of the accident. The mere fact that a statute is violated does not of itself make such violation the proximate cause of an accident. See Olguin v. Thygesen, supra.

Appellant most seriously urges that failure of the appellee to drive his vehicle completely off the highway was negligence per se, based upon the distance traveled after the loss of the wheel. The trial court specifically found that it was impossible for appellee to pull off the highway, and this finding was based upon conflicting evidence. It is uncontroverted that there was practically no shoulder and that appellee stopped on the extreme right edge of the pavement. The record is not so clear, however, as to the angle of the drop-off or its depth into the bar pit. However, it is obvious from the trial court's finding that he was satisfied that it was impossible under the circumstances to drive off the pavement. This particular finding is supported by substantial, although conflicting, evidence, and we are not justified in disturbing it.

With respect to this particular finding, appellant relies heavily upon Gutierrez v. Koury, 1953, 57 N.M. 741, 263 P.2d 557. The distinction in the two cases, however, is that, in Gutierrez, we said there was nothing to indicate that the driver of the disabled vehicle could not have pulled off the highway. We recognize that, in Gutierrez, the distance traveled by the truck after it came into difficulty was much shorter than here, yet this of itself is not conclusive and in the instant situation it is implicit from the findings made that appellee, under the circumstances, was unable to drive his vehicle off the highway.

Appellant next takes issue with the findings of the trial court, that appellant was not maintaining a proper lookout immediately before the impact; that he did not have his car under such control as an ordinary and prudent person under the same circumstances would have; and that his conduct was the proximate cause of the collision; appellant strongly urging that these findings are not supported by substantial evidence. Principal reliance is placed upon the fact that there were no eye witnesses other than appellant who could say that the appellant was not keeping a proper lookout, nor that he did not have his car under control. Also in this connection it is pointed out that there was testimony that appellant's speed was about fifty to fifty-five miles per hour, and that appellant testified that he was completely stopped just prior to the accident but was pushed into the truck upon being hit from the rear by another car. Although we fully realize that there are some conflicts in the evidence that are almost impossible to explain, we are still unable to say that there was not substantial evidence upon which

the trial court could find as it did. That court had the opportunity of observing the demeanor of the witnesses and was thus able to determine which of the many conflicting statements it believed to be true. In this connection, it is noted that the investigating officer testified that appellant had said at the scene of the accident that his speed at the time of impact was thirty-five miles per hour. This is definitely inconsistent with appellant's contention at the time of trial that his car was stopped just inches from the truck immediately before the impact. The court found that appellant was traveling in excess of fifty-five miles per hour, and there is credible testimony to substantiate such a finding. The testimony with respect to the length of skid marks as related to the distance of the headlight beams, plus the fact that one witness testified that appellant, at the scene of the accident, said that he did not see the truck, is evidence upon which the court could base its findings that appellant was not exercising a proper lookout and that he did not have his vehicle under control. The lack of an eye witness other than the appellant, although such might have been preferable, does not warrant the trial court in refusing to consider other testimony bearing upon the failure to keep his car under proper control, or the failure of the driver to keep a proper lookout.

Without attempting to discuss all of the evidence supporting the judgment, we are of the opinion that there was substantial evidence to support the findings as to the proximate cause of the collision and appellant's lack of due care. The cases cited by appellant, such as Crocker v. Johnston, 1939, 43 N.M. 469, 95 P.2d 214; Duncan v. Madrid, supra; Gutierrez v. Koury, supra, and Greenfield v. Bruskas, 1937, 41 N.M. 346, 68 P.2d 921, are based upon their own peculiar facts and are not authority under the facts in the instant case.

Lastly, appellant claims that the award of damages is excessive. The trial court awarded $35,000.00 for personal injuries, physical pain and mental anguish, and permanent disability, together with medical expenses in the amount of $3,504.00. The claim is that these damages are so excessive as to warrant our reducing the award. We have many times held that an award of damages made by a jury will not be disturbed as being excessive merely because it is larger than what this court might think to be sufficient. Hall v. Stiles, 1953, 57 N.M. 281, 258 P.2d 386; Vivian v. Atchison, Topeka and Santa Fe Railway Co., 1961, 69 N.M. 6, 363 P.2d 620; and Montgomery v. Vigil, 1958, 65 N.M. 107, 332 P.2d 1023. Only in extreme cases where the award results from passion, prejudice, partiality, sympathy, undue influence, or some corrupt cause or motive, will we disturb the award. Hall v. Stiles, supra; Asbury v. Yellow-Checker Cab Co., 1958, 64 N.M. 372, 328 P.2d 941; Montgomery,

v. Vigil, supra. Most of the cases in which a remittitur has been granted have been because of the size of a jury verdict. In the instant case, the court itself was the finder of the facts, and it cannot be said that the trial court, both learned in the law and familiar with our decisions, would be subject to the same influences as might a jury. The fact that there was no proof of loss of future earnings does not of itself warrant our disturbing the judgment of the trial court. We have carefully reviewed the record and deem that there was substantial evidence upon which the award could be based and we cannot conclude that it was excessive. What this court may have done in other cases, or what courts of other jurisdictions may have decided in cases involving similar injuries, is of no consequence. Even though this court, or the individual members thereof, might feel that the award is too high, this does not, of itself, warrant our interfering with the judgment and we decline to do so. We therefore conclude that none of the errors relied upon justify a reversal of the cause.

We would be less than frank if we did not mention that the instant case points up the necessity of the so-called substantial evidence rule as it applies to appeals. An appellate court must rely upon the fact finder for the determination of the facts of a case. Under our system of jurisprudence, it is simply not feasible for an appellate court to retry a case which is based upon conflicting testimony. The appellate court must restrict itself to determination of questions of law and leave factual determinations to the trial court, or jury as the case may be, which has the opportunity of hearing the witnesses testify and observing their demeanor and conduct while on the witness stand. A witness's testimony may, at the time of trial, be evasive instead of straight-forward, lacking in candor rather than truthful, or be such as makes it apparent to the listener that he is being less than honest in his testimony. These things and many others occurring in the trial are obvious to the trial court and influence his decision, but ordinarily are not apparent in the typewritten record so that the true "flavor" of the case is not obtained by the reader. This is merely one of the reasons why appellate courts must rely upon the judgment of the trier of the facts. So it is in the instant case. Although it might appear from the cold record that the responsibility for the accident was possibly that of the appellee, nevertheless the trier of the facts did not think so, and there is certainly substantial evidence to support this view. Where there is substantial evidence to support the findings, we will not substitute our judgment for that of the fact finder.

The judgment will be affirmed, and it is so ordered.

CHAVEZ and NOBLE, JJ., concur.